# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LORREN SCOTT FARRAR,** | |
| Plaintiff, | **No. 14 C 6319** |
| v. | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | **Magistrate Judge Mary M. Rowland** |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorren Farrar filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 976-77 (N.D. Ill.

2001).[1] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on June 27, 2011, alleging that he became disabled on March 1, 2011 due to kidney problems and breathing problems. (R. at 79, 116-21). The application was denied initially on October 14, 2011, and upon reconsideration on January 12, 2012. (R. at 73, 80). Plaintiff, represented by counsel, testified before David Skidmore, an Administrative Law Judge (ALJ), on November 20, 2012, in Chicago, Illinois (R. at 35-72). Cheryl Hoiseth, a vocational expert (VE), also appeared and testified. (*Id.*).

The ALJ issued an unfavorable decision on March 12, 2013, finding Plaintiff has not been under a disability as defined by the Act. (R. at 22-30). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since June 27, 2011, the application date. (R. at 24). At step two, the ALJ found that Plaintiff has the following severe impairments: chronic kidney disease, hepatitis C, kidney stones, hypertension, and chronic heroin abuse. (R. at 24). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (R. at 24). The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that Plaintiff has the RFC to perform a range of sedentary work. (R. at 19). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plain-

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

tiff has no past relevant work. (R. at 28). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 29). Accordingly, the ALJ concluded that Plaintiff has not been under a disability as defined by the Act since June 27, 2011. (R. at 30).

The Appeals Council denied Plaintiff's request for review on June 23, 2014. (R. at 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (ci-

tation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. MEDICAL EVIDENCE

Plaintiff has a history of kidney problems, hypertension, end-stage renal disease, and endocarditis. (R. at 284). Plaintiff has bullet fragments lodged in the central portion of his right kidney (R. at 264); a history of heroin abuse (R. at 273); and was diagnosed with hepatitis C in 2011. (R. at 390, 367).

On April 21, 2011, Plaintiff was admitted to Roseland Community Hospital, complaining of vomiting and diarrhea for the prior five days. (R. at 235). His chief complaint was abdominal pain. (R. at 238). He was admitted with endocarditis. (R. at 304). His hospital stay was complicated by renal failure requiring a period of dialysis. (*Id.*). He received three dialysis treatments, three times a week for three weeks. On May 5, 2011, he had a left subclavian PermCath insertion. (R. at 240). He was discharged on May 19, 2011. (R. at 233, 304).

On May 21, 2011, Plaintiff was seen at Roseland Community Hospital, Emergency Room, for nausea and vomiting. (R. at 214). He had no insurance. (R. at 214). He had sharp pain (9/10) in the abdomen. (R. at 217). On June 29, 2011, Plaintiff was treated in the Stroger Hospital Emergency Room for hypertension; a chest X-ray revealed no acute cardiopulmonary process. (R. at 284). An August 29, 2011 progress note from Ambulatory & Community Health Network (ACHN) of Cook County noted blood in the stool and anemia, but also that his kidney function was improving. (R. at 270). On September 13, 2011, Plaintiff went to Stroger Clinic for medication refills. (R. at 308).

On September 16, 2011, Roopa Karri, M.D., an internist, performed a consultative examination at the request of the Agency. (R. at 272-75). She noted a gunshot wound to the abdomen from 1992 for which he had parts of his intestine removed and bullet fragments remaining. (R. at 273). He was currently taking Meclizine, Norvac, Clonidine, Renagel, Pantoprazole, and vitamin B1. (R. at 273). He had been abusing heroin for 17 years intravenously, but had not used since April 2011. (R. at 273). She noted that Plaintiff was able to get on and off the exam table; could walk

50 feet without support; his range of motion was normal; and his blood pressure was 150/100. (R. at 274). She assessed kidney problems with proteinuria, endocarditis, and chronic heroine abuse, and noted difficulty with urination, shortness of breath with walking, lifting, or climbing stairs, nausea and vomiting daily. (R. at 273-75). She also noted a history of hypertension not under control with current medication. (R. at 275).

On October 11, 2011, George Andrews, M.D., a non-examining state agency physician, completed a Physical RFC Assessment and found that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, he could stand or sit for six hours in an eight-hour workday, and could never climb ladders, ropes, and scaffolds. (R. at 278-79). Dr. Andrews found he was partially credible, and noted Plaintiff is "able to prepare simple meals, do laundry, clean his room, wash dishes, shop for clothes, count change, pay bills and handle bank accounts." (R. at 284). On January 9, 2012, Julio Pardo, M.D., a non-examining DDS consultant, affirmed the October 11, 2011 decision, noting Plaintiff has the ability to perform light work with postural limitations. (R. at 292).

On January 25, 2012 at a follow-up at Stroger, notes indicate Plaintiff continued to have persistent proteinuria and hematuria, and the proteinuria has "diminished remarkably but he continues to have microscopic hematuria." (R. at 398). Notes indicate the hypertension is worsening. (R. at 399). With respect to the hepatitis C, the physician noted he "has elevated liver enzymes."

On July 5, 2012, a CT scan of the abdomen was performed due to the hepatitis C and liver lesions. (R. at 367-68). It revealed two hepatic hemangiomas, hepatic stea-

tosis, and probable ectasia. (R. at 367-68). On September 19, 2012, Plaintiff reported to Stroger Hospital because of back pain reaching 8/10 on the pain scale. (R. at 297).

**<u>Plaintiff's Testimony</u>**

Farrar is homeless and does not have a permanent residence. (R. at 43-44). At the time of his hearing, he was living with a friend in Chicago, Illinois. (R. at 44). He has a Link card, which allows him state assistance; he has no other income and no insurance. (R. at 42, 44). He last worked in 2007 as a day laborer, he does not have a driver's license, and his highest level of education is the ninth grade. (R. at 44).

His symptoms include: stomach swelling if he drinks too much water because of water retention; swelling in his ankles and hands; kidney problems that cause an inability to urinate; and nausea every morning when he wakes up and occasional vomiting. (R. at 45-46). He used to be on medication for the nausea, but was taken off of it because his kidneys could not excrete the medicine. He was also on Renagel and blood pressure medication, but is currently on Norvac. (R. at 46). Since his kidneys could not process the prescription medication, he now takes over-the-counter motion sickness pills. (*Id.*). Plaintiff indicated significant lower back pain that becomes sharp when he bends down or lifts something. (*Id.*). He also has gallstones or kidney stones, a bullet on the ride side of his kidney, and a gum infection. (R. at 47-48). He cannot take pain medication because his kidneys cannot process the medication. (R. at 47).

Plaintiff has not used heroin since April 2011. (R. at 49). He has not been on dialysis since he was hospitalized in April 2011. (*Id.*). He bleeds when he urinates; his symptoms get worse when he walks; and he has shortness of breath and a little chest pain "every now and then." (R. at 50-54). He can lift up to 25 pounds. (R. at 55). In a typical day, he goes to doctors' appointments and the methadone clinic, and then he comes home. (*Id.*). He is in the process of tapering off methadone. (R. at 56). He spends most of the day lying down because he has no energy. (R. at 57-58).

In a July 21, 2011 disability report, Plaintiff noted he was taking Clonidine, Norvac, Pepcid, Promethazine, and Ramagel for high blood pressure, upset stomach, and kidney problems. (R. at 151). In a function report dated August 8, 2011, Plaintiff noted lifting makes him dizzy regardless of how many pounds; squatting, bending, and reaching make him dizzy, weak, and fatigued; he has difficulty breathing, and he has a lot of difficulty climbing stairs because it makes him tired, weak and dizzy. (R. at 167). He can walk half a block before having to rest; he has to rest 10 minutes before resuming. (R. at 167). He noted side effects from Clonidine and Norvac, including dizziness, drowsiness, fatigue, irregular heartbeat, tiredness and fainting. (R. at 169).

The VE testified that if a person is off-task 20% of the time there would be no jobs available. (R. at 66). A person could be absent for only one day per month, or during a probationary 90-day period a person can be absent for only 2/3 of a day. (R. at 67).

# V. DISCUSSION

## A. The ALJ Should Re-evaluate Plaintiff's Subjective Symptoms in Light of SSR 16-3p.

Plaintiff contends that the ALJ erred in discounting Plaintiff's testimony about the nature and extent of his symptoms. While the Court will rely on the new guidelines concerning credibility, SSR 16-3p, the Court is also bound by case law concerning former SSR 96-7p and its "credibility" analysis.[3] The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activi-

---

[3] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citations omitted); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

With the recent issuance of SSR 16-3p, the Social Security administration has updated its guidance on evaluating symptoms in disability claims, eliminating the term "credibility" from its sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character. SSR 16-3p, 2016 WL 1119029 at *1 (effective March 28, 2016). While the new policy statement does apply to matters on appeal, the Court is also bound by case law concerning the same regulatory process under the "credibility" analysis of the former SSR 96-7p. *See Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6–8 (N.D. Ill. Apr. 27, 2016); *Pietruszynski v. Colvin*, No. 14 C 2148, 2016 WL 1535158, at *6 & n.6 (N.D. Ill. Apr. 14, 2016).

ties [. . .]." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 416.929(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("[T]he administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support the claimant. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, and former SSR 96-7p, require the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted). The Court will uphold an ALJ's evaluation of symptoms if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 940.

Plaintiff contends that the ALJ impermissibly assessed his symptoms based on his activities of daily living. The ALJ noted:

> With regard to daily activities, the claimant's allegations have been less than fully credible. At the hearing, the claimant testified that he has difficulty with simple activities. Yet, in a function report dated August 2011, the claimant indicated he is able to prepare simple meals, do laundry, clean his room, wash dishes and shop for clothes. He also reported leaving the home alone daily, and exercising by walking. The claimant is able to count change, pay bills, and handle bank accounts. He also enjoys reading and watching TV. Thus, his complaints of limited daily activities have been inconsistent.

(R. at 27).

Although the ALJ does not specify what testimony he refers to from the hearing, the Plaintiff reported that his energy levels are low and he needs to lie down throughout the day. (R. at 62). Based on this, the ALJ found Plaintiff's statements inconsistent with his August 2011 function report, and ultimately his testimony not credible.

However, a full reading of the function report supports Plaintiff's hearing testimony, in that he consistently qualifies his ability to perform tasks: "everything I do feel[s] like a job. Some days dressing can be a little hard some days it feels easy"; "I shave myself when I have the energy"; "I feed myself when I can get the energy"; he prepares food "daily most of the time when I can"; "wash my clothes at time[s], clean room, wash dishes at time when able"; "when able shop for clothes . . . I haven't shop in a while since my illness, but usually takes about an hour"; "since my illness haven't done much [hobbies and interests]; not able no more; not able to play football anymore, basketball, running, don't have the strength and energy." (R. at 162-

69). The ALJ's failure to consider entire portions of the August 2011 function report describing Plaintiff's low energy and difficulties performing the activities constitutes error. The function report, indicating difficulties and low energy when performing activities of daily living, is not inconsistent with Plaintiff's hearing testimony that he has difficulty with simple activities. The ALJ's failure here to evaluate the evidence that potentially supported Plaintiff's claim "does not provide much assurance that he adequately considered his case." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006); *c.f. Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Furthermore, the ALJ does not explain how Plaintiff's activities support a finding that Plaintiff can perform full-time, competitive work. The ALJ stated "there is nothing in the record to suggest he could not perform a sedentary job. In fact, I note that claimant reported that he can sit for two hours straight, but may feel [the] need to stand up at times. He also goes for daily walks." (R. at 28). While it is permissible for an ALJ to consider a claimant's daily activities, the Seventh Circuit has repeatedly admonished ALJs not to place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the

work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ did not adequately explain how Plaintiff's ability to perform limited household activities undermines his symptoms of fatigue and weakness. The ALJ notes that Plaintiff could perform a sedentary job because he testified that he could sit for "two hours straight" and "goes for daily walks." (R. at 28). But there is no logical bridge between these statements and Plaintiff's ability to function in an eight-hour work day environment. Moreover, the VE testified that a person who is off-task more than 20% of the workday would not be qualified for full-time employment. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day for five consecutive days of the week); *see also Moss*, 555 F.3d at 562 (noting the ALJ ignored numerous qualifications regarding Plaintiff's daily activities: "while washing dishes she shifts her weight to the left but still experiences pain; when she last went to the store she had to use the cart for support and was unable to stay long; and when she last tried to drive the family vehicle more than a year before the evidentiary hearing, she had difficulty pushing the pedals because of a lack of control or feeling in her foot"); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences be-

tween activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons [. . .], and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."). Similarly, the ALJ here ignored Plaintiff's numerous qualifications when performing daily activities. While an ALJ need not discuss or give great weight to every piece of evidence in the record, "he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto*, 374 F.3d at 474.

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence.

**B. Summary**

Because the Court is remanding on the symptom evaluation issue, the Court chooses not to address Plaintiff's argument that the ALJ erred in evaluating his hepatitis C. On remand, the ALJ shall reevaluate Plaintiff's symptoms in accordance with SSR 16-3p, taking into account the full range of medical evidence. The ALJ shall then reassess Plaintiff's physical impairments, and the RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the

basis of his findings in accordance with applicable regulations and rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Farrar's request to reverse the ALJ's decision and remand for additional proceedings [14] is **GRANTED**. Defendant's Motion for Summary Judgment [22] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: June 29, 2016

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge